| | |
|---|---|
| BRADLEY A. ANDERSON, | **No. 3:22-cv-00012-RGE-WPK** |
| Plaintiff, | |
| v. | **ORDER** |
| BNSF RAILWAY COMPANY, | |
| Defendant. | |

## I.      INTRODUCTION

In this Federal Employers' Liability Act case, Plaintiff Bradley A. Anderson alleges he was injured when he hit his head on a sign placed too close to the railroad tracks when he was working for Defendant BNSF Railway Company. Anderson asserts negligence per se and negligence claims. He moves for dispositive sanctions for spoliation of evidence under Federal Rule of Civil Procedure 37 and the inherent power of the Court because BNSF removed the sign before he could examine it. In the alternative, Anderson moves for summary judgment on his claims. BNSF resists Anderson's motion for sanctions and summary judgment.

The Court grants Anderson's motion for sanctions pursuant to its inherent power. The Court finds BNSF's intentional spoliation of evidence substantially prejudiced Anderson's ability to prove his claims on the merits. The severity of BNSF's misconduct warrants the sanction of default judgment on the issues of liability and causation. BNSF is precluded from raising a defense of contributory negligence. The case will proceed to jury trial on the issue of damages only. The Court also finds it is appropriate to require BNSF to pay attorneys' fees and costs incurred by Anderson as a result of its spoliation of evidence.

## II. BACKGROUND

Anderson was injured on March 22, 2019, while working as a brakeman for BNSF at the company's railyard in Burlington, Iowa. Def.'s Resp. Pl.'s Statement Material Facts ¶¶ 1, 15–25, ECF No. 40-1. Anderson was riding on the side ladder of a moving railcar when he allegedly hit his head on a metal milepost sign—milepost sign 205—as the train rounded a curve on the Ottumwa Subdivision Main Track 2. *Id.* ¶¶ 12–15; *see also* Pl.'s App. Supp. Pl.'s Mot. Sanctions & Summ. J., Anderson Dep. 85:23–87:1, ECF No. 35-2 at 15. There was no "close clearance" warning sign in the vicinity of the milepost sign. ECF No. 40-1 ¶ 21.

Iowa Code § 327F.13 requires the Iowa Department of Transportation to "implement the placement of close-clearance warning signs along railroad tracks where the close clearance between the tracks and an obstruction physically impedes a person who is lawfully riding the side of a train from clearing the obstruction."[1] Iowa Admin. Code r. 761-813.1(327F); *see* Iowa Code § 327F.13. Under Iowa law, a close-clearance situation is created for a tangent track, i.e., a track segment without any curves, where there is an obstruction that falls within eight feet laterally from the centerline of the track. Iowa Admin. Code r. 761-813.4, 761-813.5(1). For a curved track, clearances on each side of the track centerline must be increased by one-and-one-half inches per degree of curvature to avoid creating a close-clearance situation. Iowa Admin. Code r. 761-813.5(327F)(1). Where there is a close-clearance situation, Iowa law requires the owner of the track to place a warning sign at a location that provides adequate notice or remove the obstruction that is placed within the close-clearance dimensions. Iowa Code § 327F.13-1 to -2. An

---

[1] This provision applies only if funds are available from the Iowa Department of Transportation to reimburse an owner or railroad for the cost of the close-clearance warning sign and installation. *See* Iowa Admin. Code r. 761-813.1(327F). Written correspondence between Anderson's counsel and a representative from the Iowa Department of Transportation indicates funds were available between 2019 and April 2023. *See* Pl.'s Suppl. App. Supp. Pl.'s Mot. Sanctions & Summ. J., ECF No. 44-3 at 151–52.

"owner" is defined as "the railroad company, industry, agricultural cooperative, other entity, or individual that holds a fee simple title, easement, leasehold, contract to purchase, license, or other legal or equitable interest or right in the railroad track, and is in primary possession and control of the railroad track." Iowa Admin. Code r. 761-813.4(327F). BNSF's internal standards specify "all signs are to be placed no closer than 14 [feet] from [the] center line track, where practical." ECF No. 35-2 at 63. This distance is consistent with the generally accepted industry standard. *See* Keller Dep. 154:16–21, ECF No. 35-2 at 87.

BNSF Claims Department Manager Christopher Van Norman and BNSF Roadmaster Steve Pumphrey examined the area surrounding milepost sign 205 on or about March 25, 2019. ECF No. 40-1 ¶ 48; Def.'s App. Supp. Resist. Pl.'s Mot. Sanctions & Summ. J., Van Norman Decl. ¶ 3, ECF No. 40-3 at DEF. APP. 60; Pl.'s Resp. Def.'s Additional Statement Material Facts ¶ 45, ECF No. 46-1. While investigating the scene, Van Norman took photographs of the tracks, railcar, and milepost sign 205. ECF No. 40-1 ¶ 55; Van Norman Dep. 12:6–8, 22:11–17, ECF No. 35-2 at 120, 122; *see also* ECF No. 35-2 at 88–113. Van Norman used a tape measure to measure the distance between milepost sign 205 and the tracks. Van Norman Dep. 12:9–15, 13:7–13, 14:21–15:1, ECF No. 35-2 at 120. Van Norman took several photographs featuring portions of the tape measure. ECF No. 40-1 ¶ 57; *see also* ECF No. 35-2 at 92–94, 102–04. None of the photographs show the full length of the tape measure. *See* ECF No. 35-2 at 92–94, 102–04. Van Norman did not check to confirm his photographs captured the measurements he was attempting to show. Van Norman Dep. 34:16–23, 36:14–37:11, ECF No. 35-2 at 125–26. Neither Van Norman nor Pumphrey wrote down the measurements. *Id.* at 12:22–13:5, 17:25–18:2, 18:15–25.

After photographing the incident site, Van Norman and Pumphrey removed milepost sign 205 from the ground. Van Norman Decl. ¶ 11, ECF No. 40-3 at DEF. APP. 61. Van Norman transported the sign to a BNSF evidence preservation storage locker in Galesburg, Illinois.

*Id.* ¶ 12; Van Norman Dep. 22:11–21, ECF No. 35-2 at 122. Van Norman took two additional photographs of the sign at the evidence preservation storage location. Van Norman Decl. ¶ 14, ECF No. 40-3 at DEF. APP. 61. Van Norman alleges he created a "photo log" on March 27, 2019, detailing the date, time, and image number of each photograph he took at the incident scene, the direction from which each photograph was shot, and a "brief description" of the photographs. *Id.* ¶ 15.

Anderson filed suit against BNSF on March 2, 2022. Compl., ECF No. 1. Van Norman was deposed on February 17, 2023. *See* ECF No. 35-2 at 117. Van Norman was asked about his efforts to document the scene; he never mentioned the existence of a photo log. *See* Van Norman Dep. 6:7–11, 22:11–23:10, ECF No. 35-2 at 118, 122. Van Norman stated the only effort he made to preserve the distance from milepost sign 205 to the railroad tracks was the taking of photographs. *Id.* at 18:15–19, 22:11–23, 23:7–10. Van Norman reviewed the photographs he took at the incident scene prior to his deposition. *Id.* at 6:7–11. He was shown the photographs again during his deposition. *Id.* at 19:13–23. Van Norman was unable to testify as to the distance between the centerline and the sign based on the photographs. *Id.* at 6:12–16, 13:14–14:4, 15:2–5, 18:8–25, 29:10–18, 36:7–12. At his deposition, he repeatedly admitted he could not use the photographs to determine an accurate distance from milepost sign 205 to the railroad tracks. *See id.*

Pumphrey was also deposed. *See* Pumphrey Dep., ECF No. 35-2 at 38. Pumphrey also reviewed Van Norman's photographs in preparation for his deposition. *Id.* at 19:4–13, 21:17–22. Pumphrey similarly stated the photographs were insufficient for him to testify as to the distance between milepost sign 205 to the railroad tracks. *Id.* at 19:4–13, 22:11–15.

On March 6, 2023, Anderson filed a motion for sanctions and summary judgment. Pl.'s Mot. Sanctions & Summ. J., ECF No. 35. Four days later, BNSF's lead trial counsel, Richard T. Sikes Jr., sent Anderson's counsel the following document, which had not been previously

produced during discovery. Sikes Decl. ¶ 10, ECF No. 40-3 at DEF. APP. 69.

**PHOTO LOG**

| LDFS# | 68672 |
|---|---|
| Claim# | ANDERB032219 |
| Photographer: | CMV |
| Camera Model: | Iphone |
| Date of Incident: | 3/22/2019 |
| Location of Incident: | Burlington, IA |

| JPEG Number | Camera Location/Direction | Photo Shows | Date / Time Taken |
|---|---|---|---|
| 1622 | Burlington, IA MP 205 | MP sign facing South | 03/25/19; 8:53am |
| 1623 | Burlington, IA MP 205 | MP sign facing South | 03/25/19; 8:53am |
| 1624 | Burlington, IA MP 205 | MP sign facing North | 03/25/19; 8:53am |
| 1625 | Burlington, IA MP 205 | MP sign facing North | 03/25/19; 8:53am |
| 1626 | Burlington, IA MP 205 | Measurements of sign location from nearest rail | 03/25/19; 8:53am |
| 1627 | Burlington, IA MP 205 | Measurements of sign location from nearest rail | 03/25/19; 8:53am |
| 1628 | Burlington, IA MP 205 | Measurements of sign location from nearest rail | 03/25/19; 8:53am |
| 1629 | Burlington, IA MP 205 | Car claimant was riding | 03/25/19; 8:53am |
| 1630 | Burlington, IA MP 205 | Car claimant was riding | 03/25/19; 8:53am |
| 1631 | Burlington, IA MP 205 | Car claimant was riding | 03/25/19; 8:53am |
| 1632 | Burlington, IA MP 205 | Car claimant was riding | 03/25/19; 8:53am |
| 1633 | Burlington, IA MP 205 | Car claimant was riding | 03/25/19; 8:53am |
| 1643 | Burlington, IA MP 205 | Measurement from middle of both mains | 03/25/19; 9:30am |
| 1644 | Burlington, IA MP 205 | measurement from middle of main 2 | 03/25/19; 9:30am |
| 1645 | Burlington, IA MP 205 | measurement from middle of main 2 | 03/25/19; 9:30am |
| 1646 | Burlington, IA MP 205 | MP sign with tag | 03/25/19; 10:38am |
| 1647 | Burlington, IA MP 205 | MP sign with tag | 03/25/19; 10:38am |

ECF No. 40-3 at DEF. APP. 64.

BNSF filed its resistance to Anderson's motion on March 30, 2023. Def.'s Resist. Pl.'s Mot. Sanctions & Summ. J., ECF No. 40. BNSF included in its supporting appendix a declaration from Van Norman dated one week prior. Van Norman Decl., ECF No. 40-3 at DEF. APP. 60–63. In his declaration, Van Norman claimed he had reviewed the photographs he took at the incident scene alongside the photo log. *Id.* ¶ 22. Having "refresh[ed] [his] memory," Van Norman stated the photographs recorded the following measurements:

- Image # 1626: Measurement from nearest rail of Ottumwa Subdivision Main 2 track to MP 205 (approximately 70")
- Image # 1627: Measurement from nearest rail of Ottumwa Subdivision Main 2 track to nearest rail of Hannibal Subdivision track (approximately 12' 4" to edge)
- Image # 1628: Wider view of tracks, MP 205, and measurements depicted in Images # 1626 and 1627 . . .
- Image # 1643: Measurement from midpoint between Ottumwa Subdivision Main Tracks 1 and 2 to MP 205 (approximately 15' 8")
- Image # 1644: Measurement from center of Ottumwa Subdivision Main Track

2 to MP 205 (approximately 100")
- Image # 1645: Measurement from center of Ottumwa Subdivision Main Track 2 (zoomed out view) to MP 205 and showing Mr. Pumphrey (approximately 100").

*Id.* Anderson contends Van Norman's declaration is a sham affidavit. Pl.'s Reply Br. Supp. Pl.'s Mot. Sanctions & Summ. J. 8–23, ECF No. 46. Van Norman provides no explanation as to why he did not have access to the photo log before or during his deposition. *See generally* Van Norman Decl., ECF No. 40-3 at DEF. APP. 60–63. He also offers no legitimate explanation for his revised assertion he can "clearly" see the measurements set forth in the photographs.[2] *See id.* ¶ 16.

Anderson moves for sanctions against BNSF under Federal Rule of Civil Procedure 37 and the Court's inherent power. ECF No. 35 at 1. Anderson alleges BNSF spoliated critical evidence by removing milepost sign 205. *Id.* He further contends BNSF's failure to disclose the photo log during discovery is sanctionable under Federal Rule of Civil Procedure 26. ECF No. 46 at 23–24. Anderson asks the Court to sanction BNSF by entering default judgment against BNSF on the issues of liability and causation. *See* ECF No. 35 at 1–2. He also asks for attorneys' fees and costs. ECF No. 46 at 27–28. In the alternative, Anderson asks the Court to enter summary judgment against BNSF on the issues of liability and causation. ECF No. 35 at 2; *see also* ECF No. 35-1 at 16–36. He further asks the Court to preclude BNSF from raising a contributory negligence defense. ECF No. 35 at 2. BNSF resists Anderson's motion for sanctions and summary judgment and

---

[2] Van Norman claims he could not determine the distances measured in his photographs when asked at his deposition because Anderson's counsel presented PDF versions of the photographs, "not the original JPEG formatted versions of the photos." Van Norman Decl. ¶ 20, ECF No. 40-3 at DEF. APP. 61. However, Van Norman testified he was unable to determine the measurements based on his review of JPEG images. *See* Van Norman Dep. 6:12–16, 18:20–25, 19:8–23, ECF No. 35-2 at 118, 121. Van Norman also contends he could not "recall any specific measurements" because he was asked only "general questions about what [he] had measured." Van Norman Decl. ¶¶ 19–21, ECF No. 40-3 at DEF. APP. 61. This assertion is belied by the record. *See* Van Norman Dep. 6:12–16, 18:20–25, 21:12–14, 29:10–18, ECF No. 35-2 at 118, 121–22, 124. The Court does not find these explanations to be "legitimate reasons" for Van Norman's inconsistent testimony. *Cf. Stewart v. Rise, Inc.*, 791 F.3d 849, 861 (8th Cir. 2015).

requests a hearing. ECF No. 40.

The Court decides Anderson's motion without oral argument, finding the parties' briefings and exhibits adequately present the issues. *See* LR 7(c); Fed. R. Civ. P. 78(b). BNSF received clear notice of potential sanctions and an opportunity to be heard. *See Plaintiffs' Boycol Steering Comm. v. Bayer Corp.*, 419 F.3d 794, 802 (8th Cir. 2005). Having considered the parties' briefs and exhibits, the Court rules on Anderson's motion for sanctions.

Additional facts are set forth below as necessary.

## III. LEGAL STANDARD

Federal Rule of Civil Procedure 37 authorizes sanctions for failure to disclose information or identify a witness as required by Rule 26(a) or (e). *See* Fed. R. Civ. P. 37 (c)(1). Rule 37 states:

> If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless. In addition to or instead of this sanction, the court, on motion and after giving an opportunity to be heard:
> (A) may order payment of the reasonable expenses, including attorney's fees, caused by the failure;
> (B) may inform the jury of the party's failure; and
> (C) may impose other appropriate sanctions, including any of the orders listed in Rule 37(b)(2)(A)(i)–(vi).

Fed. R. Civ. P. 37(c)(1). Among the sanctions a court may impose under Rule 37 is an order "rendering a default judgment against the disobedient party." Fed. R. Civ. P. 37(b)(2)(A)(vi).

In addition to Rule 37, a federal court has the inherent power to "fashion an appropriate sanction for conduct which abuses the judicial process." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44–45 (1991). This inherent power is "governed not by rule or statute but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases." *Id.* at 43 (quoting *Link v. Wabash R.R. Co.*, 370 U.S. 626, 630–31 (1962)). In invoking its inherent power, a court "must comply with the mandates of due process." *Plaintiffs' Baycol*

*Steering Comm.*, 419 F.3d at 802 (quoting *Chambers*, 501 U.S. at 50). Before a district court may impose sanctions, a party must receive notice that sanctions against them are being considered and an opportunity to be heard. *Id.*

"[W]hether the extent of a sanction is appropriate is a question peculiarly committed to the district court." *Dillon v. Nissan Motor Co.*, 986 F.2d 263, 268 (8th Cir. 1993). Substantial deference is given to the "district court's determination as to whether sanctions are warranted because of its familiarity with the case and counsel involved." *Willhite v. Collins*, 459 F.3d 866, 869 (8th Cir. 2006); *accord Greyhound Lines, Inc. v. Wade*, 485 F.3d 1032, 1035 (8th Cir. 2007). In choosing between the available sanctions, the Court "is not constrained to impose the least onerous sanction available, but may exercise its discretion to choose the most appropriate sanction under the circumstances." *Chrysler Corp. v. Carey*, 186 F.3d 1016, 1022 (8th Cir. 1999). A sanction should be sufficient to remedy the prejudice caused to the moving party, i.e., to restore "the lack of integrity in the case being presented to the jury." *Id.* It should also serve "to deter those who might be tempted to such conduct in the absence of such a deterrent." *Id.* (quoting *Nat'l Hockey League v. Metro. Hockey Club, Inc.*, 427 U.S. 639, 643 (1976)).

## IV.    DISCUSSION

Anderson seeks compensation for his injuries under the Federal Employers' Liability Act. ECF No. 1 ¶¶ 14–24. The Federal Employers' Liability Act provides railroad employees with a federal cause of action for injuries "resulting in whole or in part from the negligence" of the railroad companies. 45 U.S.C. § 51. The Act imposes upon employers a continuous duty to provide a reasonably safe place to work. *Cowden v. BNSF Ry. Co.*, 690 F.3d 884, 889 (8th Cir. 2012). A plaintiff may establish liability under the Act by 1) proving negligence or 2) proving the defendant violated a specific statutory duty. *See Kernan v. Am. Dredging Co.*, 355 U.S. 426, 432 (1958).

To prove a Federal Employers' Liability Act negligence claim, a plaintiff must prove the

common law elements of negligence. *Miller v. Union Pac. R.R. Co.*, 972 F.3d 979, 987 (8th Cir. 2020). Alternatively, "[i]f a plaintiff proves a railroad violated a statutory duty, then the plaintiff need not prove the common law elements of foreseeability, duty, or breach." *Id.* at 984 (citing *Edwards v. CSX Transp., Inc.*, 821 F.3d 758, 760 (6th Cir. 2016)). A violation of a safety statute "creates liability under FELA . . . without regard to whether the injury flowing from the breach was the injury the statute sought to prevent." *Kernan*, 355 U.S. at 433. Thus, "a railroad's violation of a safety statute . . . is negligence per se." *CSX Transp., Inc. v. McBride*, 564 U.S. 685, 703 n.12 (2011).

A plaintiff seeking to recover under the Federal Employers' Liability Act must also prove the defendant's negligence caused, in whole or in part, the plaintiff's injuries. *Tennant v. Peoria & Pekin Union Railway Co.*, 321 U.S. 29, 32 (1944). "Under FELA, a railroad will be liable if its or its agent's negligence played any part, *even the slightest*, in producing the employee's injury." *Miller*, 972 F.3d at 984 (quoting *Ybarra v. Burlington N., Inc.*, 689 F.2d 147, 149 (8th Cir. 1982) (emphasis in original) (cleaned up). "FELA's language on causation . . . 'is as broad as could be framed.'" *McBride*, 564 U.S. at 691 (2011) (quoting *Urie v. Thompson*, 337 U.S. 163, 181 (1949)); *see also Fletcher v. Union Pac. R.R. Co.*, 621 F.2d 902, 909 (8th Cir. 1980) ("The test of causation under the FELA is whether the railroad's negligence played any part, however small, in the injury which is the subject of the suit.").

Anderson argues BNSF is liable for his injuries under the Federal Employers' Liability Act under either a theory of negligence per se or negligence. *See* ECF No. 35 at 2. He contends BNSF is negligent per se for violating Iowa's close-clearance statute. ECF No. 35-1 at 23–25; *see also* Iowa Code § 327F.13. Specifically, Anderson argues BNSF created a close-clearance situation by placing milepost sign 205 too close to the Ottumwa Division Main Track 2 railroad tracks. ECF No. 35-1 at 17–28. He then alleges BNSF's failure to install a close-clearance warning sign before

milepost sign 205 or remove milepost sign 205 altogether violated Iowa's close clearance-statute. *Id.* Anderson separately argues BNSF is negligent for breaching its duty under the Federal Employers' Liability Act to provide him a reasonably safe place to work. *Id.* at 28–35. Anderson argues BNSF's negligence under either theory was the cause of his injuries. *Id.* at 25–27, 34–35.

Anderson argues the Court should impose sanctions against BNSF for spoliation of evidence based on BNSF's removal of milepost sign 205 after the incident and before Anderson had the opportunity to inspect it. *Id.* at 5. Anderson argues default judgment is the appropriate sanction because BNSF's removal of milepost sign 205 prevents him from proving BNSF was negligent per se or generally negligent in its placement of the milepost sign. *Id.* at 5, 15. In the alternative, Anderson moves for summary judgment on the issues of liability and causation. *See* ECF No. 35 at 2. BNSF resists summary judgment and contends there is no basis for sanctions because there was no spoliation of evidence. ECF No. 40 at 2. BNSF argues it "preserve[d] relevant evidence" by taking measurements and photographs at the site of the incident. *Id.* BNSF contends Anderson is able to present his case because he can "easily determine" the location of milepost sign 205 at the time of the alleged incident from the photographs and photo log produced by Van Norman. *Id.*

For the reasons set forth below, the Court finds default judgment is the appropriate sanction. The Court will enter default judgment against BNSF on the issues of liability and causation under the Court's inherent power. The Court finds as a matter of law that BNSF's placement of milepost sign 205 breached its duty to provide Anderson a reasonably safe place to work under the Federal Employers' Liability Act. The Court also finds as a matter of law that BNSF's negligence was the cause of Andersons' injuries. The case will proceed to trial on the issue of damages only. BNSF is precluded from offering evidence of Anderson's contributory negligence at trial. BNSF is directed to pay attorneys' fees and costs incurred by Anderson as a

result of BNSF's spoliation of evidence.

## A.    Spoliation of Evidence

"Spoliation" is the "intentional destruction, mutilation, alteration, or concealment of evidence." *Spoliation*, Black's Law Dictionary (11th ed. 2019). The authority to impose sanctions for spoliated evidence arises not from substantive law but from a court's inherent power to control the judicial process. *See Sherman v. Rinchem Co., Inc.*, 687 F.3d 996, 1006 (8th Cir. 2012) (citing *Adkins v. Wolever*, 554 F.3d 650, 652 (6th Cir. 2009)). Therefore, any sanction imposed against BNSF for spoliation of evidence must be imposed pursuant to the Court's inherent power. BNSF's spoliation cannot be reached by Rule 37. *Cf. Chambers*, 501 U.S. at 46.

Potential sanctions against an offending party for spoliation include entry of default judgment, an adverse inference jury instruction, exclusion of evidence, and the imposition of the prejudiced party's attorneys' fees or other monetary sanction. *See Process Controls Int'l, Inc. v. Emerson Process Mgmt.*, No. 4:10–CV–645, 2011 WL 5006220, at *7–9 (E.D. Mo. Oct. 20, 2011). A spoliation of evidence sanction requires a finding of "intentional destruction indicating a desire to suppress the truth." *Stevenson*, 354 F.3d at 746. There must also be a finding of prejudice to the opposing party before a court may impose a sanction for spoliation. *Greyhound Lines*, 485 F.3d at 1035.

## B.    Intent

A spoliation of evidence sanction requires "some indication of an intent to destroy the evidence for the purpose of obstructing or suppressing the truth." *Stevenson*, 354 F.3d at 747; *accord Greyhound Lines*, 485 F.3d at 1035. A finding that a party knew or should have known not to destroy relevant evidence—standing alone—is not enough. *Stevenson*, 354 F.3d at 747–48. "Intent rarely is proved by direct evidence, and a district court has substantial leeway to determine intent through consideration of circumstantial evidence, witness credibility, motives of the

witnesses in a particular case, and other factors." *Morris v. Union Pac. R.R.*, 373 F.3d 896, 901 (8th Cir. 2004).

Anderson argues BNSF intentionally spoliated critical evidence by removing milepost sign 205 before Anderson had the opportunity to examine the incident site. ECF No. 35-1 at 9–12. BNSF disputes the milepost sign was removed in bad faith. BNSF contends its intent was to preserve milepost sign 205 "from destruction, damage, removal or alteration due to weather or the normal activities of the railroad" as well as to "prevent a similar occurrence." ECF No. 40 at 2. The evidence establishes BNSF acted with the intention of "obstructing or suppressing the truth" when it removed milepost sign 205. *Stevenson*, 354 F.3d at 747.

The Court's finds *Stevenson* instructive. In *Stevenson*, a motorist and the estate of his late wife brought a motion for sanctions against the Union Pacific Railroad in a suit arising from a grade crossing collision. *Stevenson*, 354 F.3d at 742–43. The plaintiffs alleged Union Pacific had destroyed a voice recording of conversations between the train crew and dispatch at the time of the accident as well as track maintenance records from before the accident. *Id.* at 743. Union Pacific argued sanctions were not justified because it destroyed the documents in good faith pursuant to its routine document retention policies. *Id.* The district court granted the plaintiff's motion, imposing sanctions under its inherent power by giving an adverse inference instruction regarding the destroyed evidence and awarding costs and attorneys' fees incurred as a result of the spoliation of evidence. *Id.* at 743, 745 (citing *Stevenson v. Union Pac. R.R.*, 204 F.R.D. 425 (E.D. Ark. 2001)). The Eighth Circuit held the district court was within its discretion to impose sanctions. *Id.* at 747–48.

> The Eighth Circuit reasoned the district court's bad faith determination was
>
> supported by Union Pacific's act of destroying the voice tape pursuant to its routine policy in circumstances where Union Pacific had general knowledge that such tapes would be important to any litigation over an accident that resulted in serious injury

or death, and its knowledge that litigation is frequent when there has been an accident involving death or serious injury.

*Id.* at 748. Although the *Stevenson* court conceded these were "quite general considerations," it emphasized that "an important factor" underpinning its finding of bad faith was the notion "that a voice tape that is the only contemporaneous recording of conversations at the time of the accident will always be highly relevant to potential litigation over the accident." *Id.* The Eighth Circuit concluded "this weigh[ed] heavier in this case than the lack of actual knowledge that litigation was imminent at the time of the destruction." *Id.*

Here, the Court's finding of bad faith is similarly supported by BNSF's removal of milepost sign 205 under circumstances where BNSF "had general knowledge" that the proximity of the milepost sign to the railroad tracks "would be important to any litigation" that resulted from Anderson's injuries, and knew "litigation is frequent" when there has been accident involving serious injury. *Cf. id.* As a sophisticated and frequent party to litigation, BNSF knew the location of the obstruction alleged to have impeded Anderson's clearance would be essential—not just important—to potential litigation resulting from the incident. *Cf. id.*; *see* Van Norman Dep. 25:20–26:4, ECF No. 35-2 at 123; *Spotted Horse v. BNSF Ry. Co.*, 350 P.3d 52, 56–57 (Mont. 2015) (noting BNSF "has in the past been subject to complaints from litigants concerning spoliation of evidence").

Indeed, BNSF promptly dispatched two employees, Van Norman and Pumphrey, to investigate the scene of the incident. Van Norman understood his duty as a claims investigator was to gather "pertinent" facts. *See* Van Norman Dep. 10:14–11:7, ECF No. 35-2 at 119. Accordingly, Van Norman took various measurements at the incident scene, including the distance between milepost sign 205 and the railroad tracks. *Id.* at 12:9–15, 13:7–13, 14:21–15:1. Van Norman did not write down any of these "pertinent" measurements. *Id.* at 12:22–13:5, 17:25–18:2. He took

only a handful of photographs of the tape measure, none of which showed the tape measure from end-to-end. ECF No. 40-1 ¶ 57; *see also* ECF No. 35-2 at 92–94, 102–04. He did not confirm the photographs taken showed the measurements he was purportedly trying to record. Van Norman Dep. 34:16–23, 36:14–37:11, ECF No. 35-2 at 125–26. Despite these shortcomings, Van Norman removed milepost sign 205 from the scene mere days after the incident. Van Norman Decl. ¶¶ 4, 12, ECF No. 40-3 at DEF. APP. 60–61.

BNSF's assertion it removed milepost sign 205 to prevent future harm is undermined by Van Norman's own testimony and the availability of alternative measures. *See* ECF No. 40 at 2. Van Norman testified he removed the milepost sign only to "preserve it as evidence," not to prevent future close-clearance situations. Van Norman Dep. 17:3–17, ECF No. 35-2 at 121. Furthermore, BNSF had other means of precaution to address this concern. Installing a close-clearance warning sign, for example, would accomplish the same goal without destroying critical evidence. Van Norman's unreasonable removal of milepost sign 205 "creates a sufficiently strong inference" of an intent to remove the milepost sign "for purpose of suppressing evidence of" the distance between the sign and the centerline of the railroad tracks at the time of the incident. *Cf. Stevenson*, 354 F.3d at 748.

Moreover, BNSF's conduct in the present case is consistent with its demonstrated pattern of abuse. BNSF has been repeatedly admonished for concealing or destroying evidence. *See Spotted Horse*, 350 P.3d at 57–58. For example, in *Spotted Horse*, the Montana Supreme Court held a district court abused its discretion when it declined to impose a meaningful sanction on BNSF for spoliation of evidence. *Id.* at 59–60. In that case, a BNSF employee brought a suit against the railroad under the Federal Employers' Liability Act for negligence after he was injured at work. *Id.* at 53. BNSF had a digital camera recording system in place at the time of the incident. *Id.* at 54. The plaintiff requested a copy of the video footage of the work area where the incident

occurred. *Id.* BNSF claimed the footage did not exist because its digital recording system had automatically overwritten the footage. *Id.* A BNSF employee later admitted he had utilized the video footage during his investigation of the incident and was aware the video recording system would overwrite recordings after a certain amount of time. *Id.* The employee also acknowledged he "could have requested" a copy of the video footage but declined to do so. *Id.* The plaintiff moved for and was denied default judgment against BNSF based on the alleged spoliation of the accident scene video footage. *Id.* at 55. The case proceeded to a trial, and the jury found in favor of BNSF. *Id.* On appeal, the Montana Supreme Court remanded the case for a new trial and ordered the district court to fashion a sanction "commensurate with the significance of BNSF's actions." *Id.* at 60.

Central to the Montana Supreme Court's reasoning was its alarm at BNSF's practice of willful and bad faith conduct. The *Spotted Horse* court catalogued four other cases in which BNSF had "been admonished in court for concealing or disposing of evidence." *Id.* at 57–58 (citing Order Granting Relief 3–4, *Silliker v. BNSF,* No. DV 04-0955 (Mont. Thirteenth Jud. Dist. Ct. Jan. 27, 2010) (granting plaintiff's motion for relief relating to liability and striking BNSF's defense of contributory negligence on grounds BNSF improperly disposed of "key evidence" of liability); Order 4–5, *Dolan v. BNSF*, No. ADV 01-1090(B) (Mont. Eighth Jud. Dist. Ct. Aug. 22, 2003) (ordering BNSF to pay plaintiff's attorney fees and associated costs of discovery after finding BNSF failed to be diligent in acquiring information about company vehicles which "existed and was readily available to [BNSF] at the time the Plaintiff propounded discovery request[s]" relating to his underlying claims); Order Den. Def.'s Mot. for Prot. Orders and Aff. Previously-Imposed Disc. Sanctions on Add'l Grounds 11, *Schmidt v. BNSF*, No. CDV-04-152(d) (Mont. Eighth Jud. Dist. Ct. Mar. 1, 2006) (finding BNSF's "non-disclosure [of email communications, injury reports, and claims records was] neither isolated nor relatively insignificant" but "another instance in a

larger recurring pattern and practice of dilatory and obstructive discovery practices in this and other FELA cases before this Court."); Order on Misc. Mot. and Imposing Sanctions 16–17, *Danielson v. BNSF*, No. CDV-04-124(d) (Mont. Eighth Jud. Dist. Ct. Mar. 13, 2006) (explaining despite the court's repeated warnings, BNSF continued to engage in conduct consistent with "a larger recurring pattern and practice of dilatory and obstructive discovery practices")).

In *Kowalewski v. BNSF Railway Company*, a Minnesota district court again emphasized BNSF's "pattern and practice" of misconduct when it imposed sanctions against BNSF. No. 27-CV-17-145, 2018 WL 1512810, at *15 (Minn. Fourth Jud. Dist. Ct. Feb. 25, 2018). In that case, a BNSF switchman sued the railroad under the Federal Employers' Liability Act for injuries allegedly suffered after he was exposed to hazardous chemicals in the course and scope of his employment. *Id.* at *1. The *Kowalewski* court determined BNSF's misconduct included spoliation of evidence, misrepresentations regarding the availability of evidence, discovery abuses, witness abuses, and a persistent pattern of obstruction. *Id.* at *16. Most troubling of all to the court, however, was its determination that "BNSF's behavior in the present case [wa]s clearly part of a pattern and practice of behavior that extends nationwide." *Id.* at *15. In reaching this conclusion, the *Kowalewski* court examined both *Spotted Horse* and *Paul v. BNSF Railway Company*, a Nebraska district court case in which default judgment was entered as a sanction against BNSF on the issue of liability on the grounds BNSF willfully concealed relevant audio recordings and a written statement. *Id.* at *15 (citing Order on Motions for Sanctions and Setoff 5, *Paul v. BNSF Ry. Co.*, No. 14-1505 (Neb. 3rd Jud. Dist. Ct. May 1, 2018)). The *Kowalewski* court found the two cases instructive "because they [] concern[ed] the same sort of misconduct by the same party—BNSF—as is present in the matter before the Court." *Id.* at *16.

The *Kowalski* court's reasoning applies with equal force in the present case. The Court finds BNSF's extensive history of misconduct—documented in at least seven cases nationwide—

indicative of its intent to remove milepost sign 205 "for the purpose of obstructing or suppressing the truth" in the present case. *Stevenson*, 354 F.3d at 747; *see also Spotted Horse*, 350 P.3d at 57–58; *Kowalewski*, 2018 WL 1512810, at *15–16. The unreasonableness of BNSF's removal of the milepost sign from the incident scene before Anderson had the opportunity to inspect it, its failure to adequately document measurements it knew would be crucial to any reasonably anticipated litigation, and its extensive pattern and practice of willful misconduct are sufficient to establish BNSF acted with the intent required for the Court to impose a spoliation sanction.

## C.    Prejudice

In addition to intent, "[t]here must be a finding of prejudice to the opposing party before imposing a sanction for destruction of evidence." *Stevenson*, 354 F.3d at 748 (citing *Dillon*, 986 F.2d at 267). The prejudice requirement may be "satisfied by the nature of the evidence destroyed in the case." *Id.* To find prejudice, the spoiled evidence must have been relevant and must not be available to the moving party through other sources. *Koons v. Aventis Pharm., Inc.*, 367 F.3d 768, 780 (8th Cir. 2004) (finding no prejudice where there was no evidence a lost document contained anything that would have affected the course of litigation); *Gallagher v. Magner*, 619 F.3d 823, 844 (8th Cir. 2010) ("In evaluating prejudice, we have looked to whether an allegedly harmed party took other available means to obtain the requested information."). If the missing evidence would be different or more helpful to the party claiming spoliation than the evidence that already exists, there is likely prejudice. *See Cedar Rapids Lodge & Suites, L.L.C. v. JFS Dev., Inc.*, No. 09-CV-175, 2011 WL 5975127, at *6 (N.D. Iowa Nov. 29, 2011).

Anderson argues BNSF's removal of milepost sign 205 "tremendously prejudiced [his] ability to prove the issues of liability and causation." ECF No. 35-1 at 14–15. Anderson contends the location of the milepost sign is "the only evidence of BNSF's liability in the case." *Id.* at 14. Without such evidence, Anderson argues he cannot prove negligence per se or negligence. *See*

*id.* at 14–15. BNSF responds that Anderson suffered no prejudice because "the evidence necessary for him to present his case is available by other reasonable means." ECF No. 40 at 14. Specifically, BNSF argues it preserved the evidence by taking photographs and measurements at the incident scene and keeping milepost sign 205 in storage. *Id.* at 11. BNSF also contends the location of milepost sign 205 can be "easily replicated after looking at the photos taken by Van Norman." *Id.* at 14.

The Court finds prejudice is satisfied by the "nature of the evidence destroyed in this case." *Stevenson*, 354 F.3d at 748. The Court again finds *Stevenson* instructive. There, the Eighth Circuit found the plaintiffs were prejudiced by the destruction of a voice tape because it was "the only recording of conversations between the engineer and dispatch contemporaneous with the accident." *Id.* The Court explained the spoliated evidence need not "be classified as a smoking-gun" given that it was the only such evidence of its kind. *Id.* Here, the spoliated evidence can be fairly classified as both. *Cf. id.* Milepost sign 205 is both the only possible obstruction alleged to have impeded Anderson's clearance and critical to his ability to prove his Federal Employers' Liability Act claims. *See* Van Norman Dep. 25:20–26:4, ECF No. 35-2 at DEF. APP. 123.

Anderson alleges BNSF is liable for his injuries under theories of both negligence per se and negligence. Assuming without deciding that Iowa's close-clearance statute is a safety statute within the meaning of the Federal Employers' Liability Act, BNSF's alleged violation of this statute would be sufficient to establish negligence per se.[3] Alternatively, BNSF's alleged violation of Iowa's close-clearance statute, internal close-clearance standards, and industry standards could

---

[3] The parties dispute whether Iowa Code § 327F.13, regulating the installation of close-clearance warning signs, is a safety statute within the meaning of Federal Employers' Liability Act. *See* ECF No. 35-1 at 23–25; ECF No. 40 at 15–21. The Court declines to resolve this dispute, finding the prejudice Anderson suffered is appropriately remedied by entering default judgment on his negligence claim.

have been presented as evidence of the applicable standard of care and BNSF's breach thereof. *See Immel v. Union Pac. R.R. Co.*, No. 1:18-cv-02631, 2019 WL 3997088, at \*5 (D. Colo. Aug. 23, 2019) (explaining violation of Colorado's close-clearance regulation was admissible "as evidence of the applicable standard of care and its breach thereof" to prove a Federal Employers' Liability Act negligence claim). BNSF's removal of milepost sign 205 destroyed the best evidence available to Anderson to establish BNSF's violation of any standard of care. Without such evidence, Anderson is severely prejudiced in proving his Federal Employers' Liability Act claims.

BNSF's argument that this evidence is "available by other reasonable means" is unconvincing. ECF No. 40 at 14. BNSF first suggests the evidence concerning the distance between milepost sign 205 and Ottumwa Subdivision Main Track 2 is available through Van Norman's photographs and photo log. *Id.* at 2. These documents are not an adequate substitute for the evidence spoliated by BNSF. To begin, the photos—as sampled below—are blurred and grainy. *See* ECF No. 35-2 at 92–94, 102–04.



*Id.* at 102. BNSF acknowledges the photographs are unclear and offers to provide "copies of the

photos in their original format" for the Court's inspection. ECF No. 40 at 8 n.1. Higher-resolution photographs, however, would not cure the prejudice to Anderson.

By Van Norman's own admission—and the Court's independent analysis—it is difficult, if not impossible, to estimate the measurements depicted in the photographs with any degree of certainty. Van Norman Dep. 6:12–16, 13:14–14:4, 18:8–19:6, ECF No. 35-2 at 118, 120–21. None of the photographs purporting to measure the distance between milepost sign 205 and the railroad tracks show both ends of the measuring tape in full. *See* ECF No. 35-2 at 92–94, 102–04.



*Id.* at 104.

It is thus unclear whether Van Norman even recorded the distance at issue in Anderson's claims. The distance to determine whether a "close clearance" situation existed under Iowa law is the distance between the obstruction and centerline of Ottumwa Subdivision Main Line 2. *See* Iowa Admin. Code r. 761-813.5(1). Van Norman's photo log suggests he measured the distance from milepost sign 205 to the "middle" of Main Line 2. ECF No. 40-3 at DEF. APP. 64. It is not

apparent from the record how Van Norman determined the "middle" of Main Line 2 and whether it is the same point as the centerline. *See, e.g.*, Pl.'s Suppl. App. Supp. Pl.'s Mot. Sanctions & Summ. J., Keller Dep. 108:19–24, 109:9–15, ECF No. 44-3 at 180. As depicted, the photographs convey no reliable information. As such, they are of little use to Anderson in proving the location of milepost sign 205.

BNSF further contends Anderson suffered no prejudice because the location of milepost sign 205 at the time of the alleged incident can be "easily replicated." ECF No. 40 at 2, 14. This assertion is unsupported by the record. Van Norman testified that Anderson could have found the "exact same spot" where the sign was placed because there was "a very, very small hole" remaining after he and Pumphrey removed the sign. Van Norman Dep. 15:6–16:6, ECF No. 35-2 at 120–21. He conceded the hole was "basically covered up," but claimed it was identifiable if "you removed the ballast." *Id.* at 16:4–6. At the time he made this assertion, Van Norman had not visited the incident scene since March 2019. *Id.* at 15:21–17:2. Van Norman thus did not know whether the "very, very small hole" still existed at the time of his testimony, let alone by August 2022, when Anderson's expert witness inspected the scene. *See* Ogden Dep. 38:20–24, ECF No. 40-3 at DEF. APP. 27.

BNSF expert witness Greg Weames claimed the milepost sign's precise location was marked with spray paint when he oversaw an investigation of the incident in March 2021. Def.'s App. Supp. Resist. Pl.'s Mot. Sanctions & Summ. J., Weames Decl. ¶ 8, ECF No. 40-4 at DEF. APP. 72. It is unclear from the record who marked the location with spray paint or when the location was marked. Van Norman does not state he marked the location with spray paint after he and Pumphrey removed the sign. *See* Van Norman Dep. 14:21–15:1, ECF No. 35-2 at 120. Pumphrey testified the only effort made to preserve the distance between milepost sign 205 and the railroad tracks was the taking of photographs. Pumphrey Dep. 64:24–65:6, ECF No. 44-3 at

190. Any effort at this stage to "replicate" the location of milepost sign 205 using Van Norman's photographs and photo log, a hole left by the milepost sign's removal, or spray-painted ballast would not yield the same information that could have been obtained by examining the scene before BNSF removed the milepost sign. *Cf. Am. Builders & Contractors Supply Co., Inc. v. Roofers Mart, Inc.*, No. 1:11-CV-19, 2012 WL 2992627, at *3 (E.D. Mo. July 20, 2012) ("The alternative sources identified by defendants would not provide the same information . . . that could have been obtained from examination of the laptop before the reinstallation."). BNSF's removal of the only obstruction at the scene of the incident—milepost sign 205—and its failure to reliably record the distance between the milepost sign and centerline of the railroad track is sufficient to show Anderson suffered prejudice.

### D. Appropriate Sanctions

BNSF's willful misconduct substantially prejudiced Anderson's ability to prove his claims on the merits. Having determined that BNSF engaged in spoliation of evidence by removing milepost sign 205, the Court next determines whether and what kind of sanctions are appropriate under the Court's inherent power. The severity the BNSF's spoliation warrants the sanction of default judgment on the issues of liability and causation.

### 1. Due Process

Before imposing sanctions, a party "must receive notice that sanctions against [them] are being considered and an opportunity to be heard." *Plaintiffs' Boycol Steering Comm.*, 419 F.3d at 802. Before imposing the "most severe sanctions," a district court should provide "clear notice" as to the form of the sanction. *Security Nat'l Bank of Sioux City v. Day*, 800 F.3d 938, 944 (8th Cir. 2015) (citing *Harlan v. Lewis*, 982 F.2d 1255, 1262 (8th Cir. 1993)). "Any opportunity to be heard would be of little value without notice of the nature of a potential sanction, for only with that information can a party respond in a cogent way." *Id.* (citing *Simmerman v. Corino*, 27 F.3d 58,

64 (3d Cir. 1994)). The opportunity to be heard "does not necessarily entitle the subject of a motion for sanctions to an evidentiary hearing. An evidentiary hearing serves as a forum for finding facts; as such, its need can be obviated when there is no disputed question of fact or when sanctions are based entirely on an established record." *In re Reed*, 888 F.3d 930, 938 (8th Cir. 2018) (quoting *Schlaifer Nance & Co. v. Estate of Warhol*, 194 F.3d 323, 335 (2d Cir. 1999) (internal citation omitted)).

Here, Anderson's motion for sanctions and summary judgment provided notice the Court "would be considering the imposition of the most severe sanctions" against BNSF on the basis of its alleged spoliation of evidence. *Cf. Harlan*, 982 F.2d at 1262. Anderson's motion provided BNSF with "clear notice" of the fact sanctions are under consideration, the reasons why they are under consideration, and the type of sanctions being considered. *Cf. Security Nat'l Bank*, 800 F.3d at 944; *see also* Gregory P. Joseph, Sanctions: The Federal Law of Litigation Abuse, § 17(A) (6th ed. 2021). Anderson's motion for sanctions is based on the established record. *Cf. In re Reed*, 888 F.3d at 938; *see supra* Parts II, IV.B–C. As such, BNSF's opportunity to respond in writing is sufficient. *See* ECF No. 40 at 6–15; *see also In re Deepwater Horizon*, 643 F. App'x 377, 383 (5th Cir. Apr. 8, 2016) (unpublished) ("The district court complied with due process when it gave [respondents] the opportunity to respond in writing . . . . The opportunity to respond through written submissions to motions for sanctions usually constitutes sufficient opportunity to be heard." (internal quotation, citation, and brackets omitted)).

### 2. Sanctions

A court must exercise its inherent power with restraint and discretion. *Chambers*, 501 U.S. at 44. A primary aspect of that discretion is the ability to fashion an appropriate sanction. *Id.* at 44–45. When considering which sanction to impose, the Court takes into account the twin aims of punishment and deterrence. *See Nat'l Hockey League*, 427 U.S. at 643. The Court also has a

responsibility to ensure the judicial system provides a fair opportunity for litigants to present their claims and defenses. *See, e.g.*, *Schumacher Immobilien UND Beteiligungs AD v. Prova, Inc.*, No. 1:09CV18, 2010 WL 2867603, at *5 (M.D.N.C. July 21, 2010) ("Courts have the power to impose sanctions for spoliation of evidence in order to preserve the integrity of the judicial process in order to retain confidence that the process works to uncover the truth." (internal quotation marks and citation omitted)). These considerations counsel in favor of default judgment.

BNSF's spoliation has resulted in an irreparable loss of evidence and substantial prejudice to Anderson. BNSF's removal of milepost sign 205 before Anderson had the ability to inspect the incident scene combined with its complete failure to record any reliable measurements severely undermines Anderson's ability to prove the essential elements of his claim. Anderson is unable to prove the location of milepost sign 205 due to BNSF's spoliation. Without this evidence, Anderson cannot prove the contested elements of breach or causation. The sanction of default judgment is commensurate to the damage caused by BNSF's spoliation and the severity of its abuse of the judicial process. *Cf. Chambers*, 501 U.S. at 44–45.

Default judgment is also appropriate to punish and deter BNSF, whose pattern and practice of misconduct is well documented. *See supra* Part IV.B. Despite receiving multiple court admonitions for destroying and concealing evidence, BNSF engaged in the same type of misconduct here, destroying not just any evidence, but the only evidence available to Anderson to prove his claims. *See Spotted Horse*, 350 P.3d at 59–60. Lesser sanctions would not sufficiently punish BNSF, meaningfully deter it from engaging in future bad faith spoliation, or remedy the extreme prejudice to Anderson. *See Nat'l Hockey League*, 427 U.S. at 643; *see also Chrysler Corp.*, 186 F.3d at 1022 (explaining the Court "is not constrained to impose the least onerous sanction available, but may exercise its discretion to choose the most appropriate sanction under the circumstances").

Accordingly, the Court finds as a matter of law that BNSF was negligent in its placement of milepost sign 205. Specifically, the Court finds BNSF's placement of the milepost sign breached its duty to provide Anderson a reasonably safe place to work. Default judgment will be entered as to BNSF's liability under the Federal Employers' Liability Act. BNSF is precluded from raising a contributory negligence defense at trial. The Court also finds as a matter of law that BNSF's negligence was the cause of Anderson's injuries. The Court finds it is appropriate to require BNSF to pay the attorneys' fees and costs incurred by Anderson as a result of BNSF's spoliation of evidence. BNSF's removal of milepost sign 205 was conducted in bad faith, making an award of attorneys' fees appropriate. *See supra* Part IV.B; *see also Chambers*, 501 U.S. at 45–46 (finding a court may assess attorneys' fees when a party has "acted in bad faith, vexatiously, wantonly, or for oppressive reasons"). Finally, the Court will send a copy of this Order to the Iowa Supreme Court Attorney Disciplinary Board and the Illinois Attorney Registration and Disciplinary Commission, in the event either body should see fit to initiate an investigation into an apparent abuse of legal procedure.

## V. CONCLUSION

The Court grants Anderson's motion for sanctions under its inherent power. Judgment will be entered for Anderson on the issues of liability and causation on his claims. The case will proceed to trial solely on the issue of damages. BNSF is precluded from offering evidence of Anderson's contributory negligence at trial. Additionally, the Court grants Anderson's request for reasonable attorneys' fees and costs incurred as a result of BNSF's spoliation of evidence. Anderson is directed to submit an affidavit providing an itemized accounting of relevant expenses after the resolution of this case in order for the Court to calculate an appropriate fee award.

For the foregoing reasonings, **IT IS ORDERED** that Plaintiff Bradly A. Anderson's Motion for Sanctions and Summary Judgment, ECF No. 35, is **GRANTED** as to sanctions. The

Clerk of Court is directed to send a copy of this Order to the Iowa Supreme Court Attorney Disciplinary Board and the Attorney Registration and Disciplinary Commission of the Supreme Court of Illinois.

**IT IS FURTHER ORDERED** that Plaintiff Bradley A. Anderson shall file an affidavit providing an itemized accounting of costs, expenses, and attorneys' fees incurred as a result of BNSF's spoliation of evidence and a brief explaining its affidavit within seven days of the resolution of this case.

**IT IS SO ORDERED.**

Dated this 6th day of July, 2023.

REBECCA GOODGAME EBINGER
UNITED STATES DISTRICT JUDGE